CLIFTON N. PHILLIPS, appellant,

*v.*

MARTHA K. THOMAS et al., respondents.

[Decided October 21st, 1920.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"I entertain the view suggested early in the argument that this case is purely a question of evidence; in the last analysis it reduces itself to that, and that alone, in my judgment. The inquiry is: Does the evidence justify with clearness a finding of fact that an option of purchase for $10,500 was given at the time the lease was made?

"The lease contains what has been referred to as an option of purchase. I scarcely know whether it can be called that or not. It is clearly meaningless, or forceless, at best. It, in terms, gives to the tenant an option of purchase without specifying anything more, consequently, it gives him nothing in the form it is executed. Now, what was in fact agreed upon and intended to be put in that lease is not at all free from doubt in my mind, and the existence or non-existence of such doubt is the test of right to relief in a specific performance case. The law will not privilege a court of equity to grant that form of relief where there is an element of material and substantial doubt, either of law or of fact. It may have been that when that lease was signed both parties clearly understood that they were obligating the landlord to sell that property at any time during the succeeding year to the tenant for $10,500 in cash; it may be, I say, that Mrs. Thomas understood that and that Mr. Phillips intended to state that when he wrote the lease, but it is far from certain that either of those propositions is true. Mrs. Thomas on her part

says she did not know there was an option in the lease, and that never prior to that time had she given him a price on that property in the nature of an option. If her testimony is true, she signed the lease without knowing there was any suggestion of an option of any kind in the lease or without realizing that she was obligating herself in any manner to sell that property for a given price, should the tenant elect to take it, during the succeeding year.

"Nor do I think it clear that in the form that the supposed option is expressed it was really intended to be anything more than that type of option which we frequently find in leases which gives a tenant what is called the preference right of purchase. In other words, the landlord engages that if a purchaser is found the tenant shall have the first right at the proposed selling price. There is nothing in the form of the imperfect option that clearly indicates that it may not have been intended to be of that nature, and if the testimony of Mrs. Thomas is at all to be relied upon, I think it is very doubtful whether she ever understood that she ever was under any obligation greater than that to Mr. Phillips. Her testimony is that she never offered it to him for a given price, either by option or otherwise, prior to the succeeding March; that she did not know that this option was contained in this lease in any form, and I very much doubt whether any court of equity in a specific performance case would have the right to disregard her testimony under all the circumstances that are here present.

"Of course, these inquiries could not be indulged at all, but for the fact that in the following October Mrs. Thomas signed a writing, in effect, reciting that she had in the preceding January given an option to Mr. Phillips for the succeeding year at a price of $10,500. If the option given in January had in fact been to that effect. and had been imperfectly stated in the lease, I can see how the subsequent writing could have supplied the error in the lease and satisfied the statute of frauds and rules of evidence. Otherwise, the October incident was clearly a new contract. Mrs. Thomas says that what she wrote in October she wrote merely at Mr. Phillips' dictation, and that it did not truly

state any January contract, and her daughter testifies that what she wrote on that occasion she wrote at Mr. Phillips' dictation. In other words, her desire or friendship or appreciation of Mr. Phillips was such that she desired to aid him and she was at that time apparently quite as willing to depend upon and trust him as she had been in the preceding January when she signed her lease without knowing it had an option of purchase in it after he had prepared it. If that statement on her part is true the October writing did not supply any missing terms of the January lease.

"The argument is made by Judge Cole that this act on her part in October was purely conditional, and it seems to me almost impossible to escape the conclusion that it was in spirit conditional; if it was not expressly so; it seems to me the spirit of the occasion imposed such a condition, the condition being that what she was doing was to help Mr. Phillips, providing she could help him without embarrassing herself by reason of the agreement she had already executed for the sale of the property to another. No one can suppose for a moment that Mrs. Thomas would have deliberately tied herself up in that manner had she realized the position she was placing herself in. If Mr. Phillips had known, as it seems to me he must have known, the position the paper which he was having her sign was placing her in, his act would have been, to say the very least, ungallant; and it seems to me that it is impossible for the mind to rest upon that meeting of the parties in the home of Mr. Phillips and visualize what there transpired upon any theory or upon any conception other than that what Mrs. Thomas did, and all she did was because, and only because, she was induced to believe by the very nature of the whole occasion that she could help Mr. Phillips without injuring herself or in any way embarrassing herself. I cannot believe but that that condition pervaded the atmosphere of the entire occasion from beginning to end, and that any writing signed by her at that time must be accepted with such an implied condition, if it was not in it expressed, and for Mr. Phillips at this time to seek to enforce that against her in such manner as will embarrass her with the persons to whom

she has made a prior agreement of sale violates, to my mind, the conscientious spirit of that occasion to such an extent that it would be unjustified and inadequate to support an equitable decree.

"But entirely aside from that, I think the evidence cannot be said to clearly disclose an original contract or option in the original lease made in January for the sale of that property for any fixed price.

"Unless further reflection leads me to a conviction that I am in error in this, I shall advise a decree dismissing the bill. I will give the case further reflection, first, having my stenographer transcribe the views which I have expressed, and should I be led to another conviction I shall be entirely free to say so."

*Messrs. Bourgeois & Coulomb,* for the appellant.

*Mr. Clarence L. Cole* and *Mr. William L. Charlton,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—14.

*For reversal*—None.